Third case of the day, United States v. Johnman. Good morning, and may it please the Court, Alison Brill, Assistant Federal Public Defender for the District of New Jersey. I represent James Johnman, and I'd like to reserve three minutes for rebuttal. Granted. The District Court committed plain error in imposing a $15,000 special assessment under the Justice for Victims of Trafficking Act. 18 U.S.C. 3014 permits an assessment in the amount of $5,000, in addition to the mandatory special assessment under 3013, restitution for victims, and the criminal fines. Counsel, for error to be plain, it needs to be clear and obvious. But here we have a situation where no court in the country yet has addressed the precise question before us. And every court that has addressed identical language in a neighboring provision has come out the other way. How could we then say that error was plain? Two responses to your question, Your Honor. Could you speak up a little bit? Of course. Two responses to your question. First, you don't need to set a legal precedent for something to be a plain error. Mr. Johnman is raising this claim as a violation of the statute, that it's above the statutory maximum. And this Court has found in Lewis and Gunter and Tan that a sentence that exceeds the statutory maximum can be a plain error, despite no legal precedent. An issue of first impression can be a plain error. To your second point, whether courts have found that an identical statute permits a stacking or an aggregation of the assessment, it is not an identical statute. There's similar language between 3013 and 3014, but there are significant textual differences that make a difference to my argument. Could you turn to those textual arguments? Yes, of course. Because that's really the issue that's before us. So in determining the maximum assessment under 3014, we begin with the text. And here the plain text to start only lists one amount, $5,000. There's no indication in text that the number of counts is relevant. In fact, here, somewhat uniquely, we have the unit of measurement as different chapters, five chapters that relate to sex and human trafficking. This is quite different than 3013, which pegs the assessment to certain grades of offenses. Why does that make a difference? It makes a difference. I'll refer to Donaldson, which is the Third Circuit case that discussed the 3013 assessment. It makes a difference because if you only link it to, let's say, the highest grade of the offense, for example, the felony offense, then you have one person charged with multiple felonies has one assessment, but then a person who's charged with a felony and a misdemeanor would have multiple assessments. That's how Donaldson read 3013. And that produces an absurd result where the more culpable defendant would have one assessment and the less culpable defendant would have multiple assessments. So the classification and the different amounts that were listed for that, there's a suggestion that multiple assessments would apply to multiple counts. So not just the classification, but the different numbers make a difference in the case. But didn't we also think, Donaldson, it was at odds with common sense, the notion that it would depend on the serendipity of whether someone was charged in a single instrument or multiple instruments, the amount of a special assessment that would apply? That was a point that was made in Donaldson. That is the context of criminal cases, that there is the serendipitous effect of where a defendant is charged and how a defendant is charged and how a defendant ultimately is convicted, whether by plea or by trial. It's not if you have a special assessment applying to each and every count. Correct. And in the case of a nominal assessment in Donaldson, that was a reasonable interpretation. It was in debate all over the country. It wasn't a given that that would be clear to everybody, but all the courts did resolve it in that favor. But that was in the case at the time of between a $10 and $50 assessment, now up to $100 per defendant. So why does that matter? Why does the amount matter? Why does the assessment matter? The amount matters because nominal permits courts to be more generous with a reading of a statute. $5,000 is a significant amount for a criminal defendant, and clearly multiples of $5,000 are very significant amounts for criminal defendants. And we know that the nominal amount is distinguishable with 3014 because we have the indigency exception in the statute. And the indigency exception is another significant textual difference for us to be able to read. 3014 is only permitting one $5,000 assessment. Why doesn't it show the opposite, that Congress knew exactly how to ensure that the assessment would not be too burdensome? It was legislating against the backdrop of a uniform interpretation of 3013, and it made a provision, an explicit one, for dealing with indigency, but otherwise used identical language to 3013. Two responses. I don't agree that it's identical language. There are certain similarities. It uses the word an offense, which is a way that statutes generally refer to criminal convictions. There's other significant differences. For example, and I didn't point this out in the brief, but subsection B, another significant difference is that this assessment is paid after the special assessment under 3013, mandatory restitution, and the criminal fine. And subsection B states that the assessment shall not be payable until any other obligation related to victim compensation is paid, arising from the criminal convictions on which the special assessment is based. What about the language of A in both provisions? Because in 3013, we're looking at the language, the court shall assess on any person convicted of an offense the amount of, and dollar amount. And in 3014, we have the court shall assess on any person convicted of an offense an assessment. In both cases, we have a single offense being referenced and the singular of the assessment. Why shouldn't that dictate a consistent interpretation across the statutes? Because every other part of the statute is different. So those two, an amount of and an offense are similar. The indigency exception is a huge distinction. The citation to chapters, to five chapters, as opposed to the classification of the offense is a difference. The listing of different amounts for different classifications. So the suggestion that different amounts could apply is a difference. And again, that it's in addition to. We're not doing guesswork. Did Congress know that it was operating against the backdrop of another statute? This is an assessment on top of the stacked 3013 that nobody's disputing applies. Doesn't that sort of cross-reference between statutes and the canons of construction indicate we should recognize Congress understood the meaning of the same language in another statute and is making explicit reference to it? The prior construction canon is a way to interpret a statute beyond the plain text. But if there's materially different language, then that doesn't apply. And so here, there is the cross-reference again. But it's not just a cross-reference. It's in addition to. We're recognizing that this defendant is going to pay some multiple, in Mr. Johnman's case, $300 plus this assessment here. And then the language throughout the statute, not just subsection A, that's different. The way that the assessment is paid after all the other assessments, the way that the collection applies for 20 years after judgment or release from prison, whichever is later, these are all differences, significant differences, where Congress is. We can infer acknowledging that the statute should be interpreted differently. But 3013 was passed 25 years before 3014, correct? Correct. And in the intervening period, every case to address what 3013 language, i.e., person or entity convicted of an offense, every court to construe that under 3013 said it was per count, not per person, correct? Correct. So when Congress enacted 3014 and used the language person or entity convicted of an offense, they did it with the knowledge of what that meant, did they not? And shouldn't they have said, oh, but only against the person and not as per the count? Wouldn't they have said that if they wanted a different result? They could have said that. They also did other things to distinguish the text. But not in a material way. So the indigency exception is a material way because it's an all-or-none statute. Yeah, but what does it mean? It just means we're not going to assess this against people who can't afford it, or, you know, they're indigent, they can't pay $5,000, or they can't pay $25,000. They're indigent or non-indigent, separate and apart from the amount. They're either going to be determined indigent or non-indigent based upon the assets they have, their wherewithal. Whether it's $5,000 or $25,000 if they're five counts isn't going to impact, is it? Well, two responses. And the first is that indigency has been interpreted extremely narrowly in this context. And all the cases that I've seen have found defendants that are entitled to appointed counsel to be non-indigent. To me, it's a non sequitur that indigent or non-indigent and count or person, I don't see how the two relate. So it goes back to the difference between a nominal assessment and the permissibility of stacking those and the permissibility of stacking a $5,000 assessment. And in some cases, it could be so high. You have such a culpable defendant, you know, not Mr. Johnman with three counts, but 13 counts after a trial. And that defendant, the most culpable defendant, is likely to be found indigent because his ability to pay in the present or the future for taking a standard adopted by some courts would be impossible. $65,000 on top of a special assessment, fine, likely restitution, significant restitution. So you're saying the determination of indigency in this context is going to take into account the amount of the fine as compared to a person is or isn't indigent? So when they're looking at future earning capacity, the potential to pay the amount, I do think the amount of the fine is relevant. I do think that if one person being able to pay $5,000 into the future or even in the inmate program versus an inmate being able to pay $65,000, I think that produces the same sort of absurd result that the court was concerned with. OK, but so you take it into account in determining indigency and you say, OK, it's $5,000 because it's one count or he can't pay $25,000 because it's five counts. But I don't see how that then says, oh, well, we're not going to look at it per count. We're going to look at it per person. To me, that's a non sequitur. It's relevant to the extent that Congress is worried about funding this victim compensation and all the programs that the Justice for Victims of Trafficking Act set up. All the more reason they'd want it per count to add up to more money. But not if an indigent person would never pay anything. Like, for example, there's no bumping it down. There's no reduction so that an inmate could pay $5,000 but not $65,000. If you're indigent, you pay nothing. And so Congress isn't able to fulfill its goal of filling up the coffers with the $30 million. Your argument that different interpretation turns on the different amount of the assessment rests on the rule of lenity. My argument to begin with is that the plain text only permits $5,000. And that's a reasonable reading that courts have applied. That I cited in my brief and that I've even seen more since then. That's a reading that courts, probation officers, prosecutors, defense attorneys are not finding problematic, despite 3013 having similar language. But the rule of lenity, given that courts are in dispute over the plain text, the rule of lenity certainly does answer the question. Does it apply to the special assessment notwithstanding Donaldson? Yes. So Donaldson, as I briefed, the exceptions that Donaldson brought up for why 3013 didn't apply the rule of lenity don't apply in this case. Because Donaldson was talking about a nominal amount, $50, as opposed to $5,000. Donaldson was talking about classifying a misdemeanor or a felony, as opposed to this case where we're talking about chapters about human and sex trafficking. Donaldson was discussing sentences to be imposed in criminal cases. And again, classification of a felony or misdemeanor didn't talk about a sentence in a criminal case. In this case, we have very specifically, you are convicted of certain sex trafficking offenses that the assessment applies. So I believe that Donaldson, even with Donaldson, this court can still rule that the rule of lenity applies. Although in Donaldson it said in enacting, the purpose in enacting 3013 was not to punish, but rather to raise revenue to support state crime victim compensation programs. So it wasn't punitive. Wouldn't that same view as to purpose apply here? I was looking at that language, and then the court helpfully asked the parties to look at Kokesh versus SEC, which I believe, again, supports that Donaldson was wrong on that and that this would be a penalty. But Kokesh says, when an individual is made to pay a non-compensatory sanction to the government, as a consequence of a legal violation, the payment operates as a penalty. And so even though Donaldson said it was enacted to raise revenue, Kokesh also says sanctions frequently serve more than one purpose. And so that's not controlling that both in 3013 and in 3014 we have revenue being raised for certain victims' funds. That just is the effect. It's certainly part of a criminal punishment. Thanks, Ms. Brewer. We'll hear back from you in a little while. You're giving me a few extra minutes, and Mr. Zalzman may have that as well if he wishes. Thank you, Your Honor. Good morning. May it please the Court, Robert Zalzman on behalf of the government. Your Honors know our principal argument, which is that the language matches 3013, and Congress is presumed to know the judicial interpretation of the statute. But I want to take that one step further. When I thought of reading my friend's excellent reply brief, where she focused, as she does again today, on the amount, the fact that this is $5,000 versus $100 for the special assessment. And what occurred to me is that there are so many federal statutes, federal punishment provisions, that are much more draconian than this, which are always considered based on the individual offense. What jumped to mind immediately when I read the reply brief was the fine provision. The fine is Section 3571 of Title 18, exact same language, that you will impose a fine on a person convicted of, quote, an offense. And as we know, the maximum possible fine in every felony case under that statute, the default is $250,000, not $5,000. And yet, it's commonly and universally understood that that is applied per count. And thus, when someone is convicted of four counts and we lay out the maximum penalties, we say you face a potential fine of $1 million. Taking this just one step further, what occurred to me was that this is true of all criminal punishment. I've racked my brains to think of an example of a statute that gives a criminal penalty in a single criminal case based solely on the fact of showing up, just that you have the conviction, as opposed to per count or per conviction. In a criminal case, I think there are basically six things that happen generally. You have imprisonment. You have supervised release. You have a fine. You have a special assessment. You might have restitution. You might have forfeiture. Every single one of those provisions under the statutes enacted by Congress are determined based on the individual count and the individual offense. In making these analogies, is the government conceding that a special assessment is a penalty? That is, it's punitive for purposes of turning to the rule of lenity if we were to find ambiguity in the statute? Yes. Yes, we are. It is a penalty. And notwithstanding the holding in Donaldson, and with all respect to Judge Adams, for whom I clerk, the fact of the matter is it's been superseded by subsequent decisions. Not just Kokesh, but the other significant development is in the double jeopardy area, the Rutledge decision of the Supreme Court, which has been echoed in other decisions of this court, that a special assessment is punishment for purposes of the double jeopardy clause. And the Supreme Court and this court have therefore held that even if you have multiple convictions that violate the double jeopardy clause, you can't escape that based on the concurrent sentence doctrine. So does the rule of lenity require that we view this in the light most favorable to the defendant? No, because respectfully, Your Honor, that is not what the rule of lenity is. The rule of lenity is not, let's cut a break to a defendant because criminal penalties are harsh. The rule of lenity is a matter of statutory interpretation. And the rule of lenity is that we use all sources of interpretation that are available to us. And if at the end of the... There's an ambiguity. Right. And at the end of the day, if there is a grievous ambiguity, according to the Supreme Court, then the rule of lenity says defense prevails. It is not a, you know, get out of jail free card by any means. And that's why not just with regard to this $5,000 provision, but so many severe penalty provisions in the federal code, we interpret them. We don't... It's a rare instance where you get as far as that grievous ambiguity that leads to application of the rule of lenity. Here, in our view, Your Honor, there's no ambiguity at all. Again, this is consistent. Congress is acting here not only consistently with the same language that it is used in the other special assessment, but in every punishment provision that somebody convicted of an offense may face this. And I think... Donaldson... Weren't we assuming in Donaldson... Our premise for the analysis and the application of different canons of construction was that the language, the plain text, was ambiguous. And so there was reason to apply different canons of construction in trying to ascertain the meaning of it in 3013. Why shouldn't that carry over here, at least to the extent we start with just plain text? Assuming it's the same plain text, why doesn't it have the same ambiguity? We can then turn to different canons, like the backdrop against which Congress was legislating. But isn't the plain text just as ambiguous now as it was in Donaldson?  The way Donaldson is written, the discussion begins with saying, let's move this rule of lenity out of the way. We're not going to consider it. But at no point, to my recollection, does the court say, there is an ambiguity here. Instead, it looks at the language, and what it specifically focuses on, as every other circuit court has focused, are the words, an offense. The First Circuit, I think, went further and said, this wouldn't even make any sense. If an offense meant it applies to all offenses. There's similar clear language like that, by the way. When I was listening to my friend parse Section 3014 this morning, if you look at 3014, the provision we're dealing with now, it not just says as an offense, but as your honors have pointed out, it says in addition to the assessment imposed under Section 3013. Now, Congress knows that multiple special assessments are imposed in cases in which there are multiple offenses. And this language, for the exact same reasons stated in Donaldson, would not make any sense. If you're saying the assessment, it has to mean the assessment for the same count that we're now applying this $5,000 assessment. Why shouldn't we conclude in subsection B that Congress meant that it was going to be an assessment that was on top of these other fines, orders of restitution, et cetera, arising from the criminal convictions, plural? Because at that point, Congress is addressing a different fact, which is simply the order of payment. And there it makes sense that whether you've applied one special assessment under this, or five, depending on the number of counts in the case, Congress is now saying all of them come after you've paid every other criminal penalty in the case. And that's an understandable thing to address, but it doesn't impact what the amount is. There's no correlation between those two things. But it references arising from the criminal convictions, plural, on which the special assessment is based. Doesn't that tell us Congress had in mind a single assessment for multiple convictions? I don't think so, because again, the statute in the order it flows starts with the assessment for an offense. And so then at the end it is saying that assessment is paid after the convictions. It logically follows that if you have multiple assessments based on multiple counts, it would apply the same way. I don't think that creates any ambiguity in language that this court and all the other courts have consistently said is not ambiguous. But isn't it implicit in Donaldson that we felt it was ambiguous? There's no statement in Donaldson that there's any clarity. And it goes through ways of trying to discern the meaning of it, legislative history, et cetera, et cetera. Isn't it implicit in our opinion that it was ambiguous? I don't believe so, Your Honor. I think that Donaldson is an ordinary, very faithful application of the rules of statutory interpretation, of going through, starting with the plain language, as one's required to do, and then looking at the legislative history and looking at the other materials, and doesn't seem to... There's nothing in here that would lead you to believe that the meaning is clear. Well, I don't believe in reading Donaldson that this was much of a struggle, that the court did what it's required to do. No, but it went to different arguments about what it would mean in legislative history and the absurdity of reading it one way versus another. It seems to me a typical ambiguity analysis. I see that as a typical, commendable statutory interpretation of going through the steps that are required and explaining the court's conclusion as opposed... If it's a question, what does ambiguous mean? I suppose. Maybe that's ambiguous. And that also touches, Your Honor, on what the rule of lenity is about, which is that the rule of lenity, as applied by the Supreme Court, acknowledges that statutes might be ambiguous and needing interpretation, but the mere fact of ambiguity, and maybe this is what Your Honor is suggesting, the mere fact of ambiguity doesn't mean we throw up our hands and walk away. We go through the steps that Donaldson went through, and at the end of the day, it doesn't look like Donaldson thought this was very difficult, nor did any other court, as it turns out, over the ensuing 30 years. Donaldson took the question of rule of lenity first. It did. It did. And that's a bit unusual, but that's how the court elected to write the opinion. But here, I think the moment before we would get to the rule of lenity, one would have to say this is not a grievous ambiguity. This is a statute written using the same terminology that's used in every other federal criminal sentencing provision. Is the standard grievous ambiguity or ambiguity? I believe once those steps that Donaldson goes through and so many other cases go through are completed, there is no ambiguity remaining here. No, but the question was where are you getting grievous ambiguity? Oh, the Supreme Court, I believe, has used that term, and we can submit a letter, if Your Honor wishes, of where that has been stated. But the main rule of the rule of lenity is that we have exhausted every other method that we use to resolve an ambiguity and to interpret a statute, and we're simply left with our hands up. And at that point, the court would then say defense prevails, based on the fact that these are criminal penalties. The other thing I would point out about the statute, about 3014, is that it lists all of the many different and very serious crimes that may trigger this special assessment. Crimes relating to peonage and slavery and trafficking and sexual abuse, and that also wouldn't make much sense. That if you have somebody who committed many offenses involving many victims, that again, contrary to the way criminal sentencing is always conducted, that that person still gets the same $5,000 penalty as someone who only offended one victim. And that's comparable to the analysis in Donaldson, where Donaldson is saying, why are we treating better somebody who has multiple counts in one case, you know, versus somebody who might be convicted in multiple separate cases. I'm assuming if we found that it was per person, that you would start your indictments having one count and just have multiple indictments. You could absolutely do that. The fact is, most criminal cases, as your honors are well aware, end in guilty pleas. And many negotiated guilty pleas in this area are pleas to one count. And that's why in the brief history of this statute, we've had so many cases with single $5,000 assessments. But there will be serious cases, and this was a really serious case, if you look at the different criminal conduct that was involved, where it is appropriate to have multiple assessments based on the number of victims who were exposed. What do you think the non-indigent aspect adds to the argument? I don't. I think that's a separate issue. I think the Congress has recognized that there's a significant amount of money as a mandatory penalty, and therefore it felt the need to give the exception for somebody who's indigent, to permit the courts to recognize that. But I don't see how that would affect the interpretation of what an offense is. Ms. Brill's made the argument that's the flip side of the absurdity argument, that if it's going to be different amounts of special assessment, it effectively would change the definition of indigent. What's your response to that? I can't say that I understand the argument with all respect. The court makes a judgment as to whether the person is indigent or not. She is correct that there have been some reported decisions recently in which courts have looked at future earning power and found that people are non-indigent. That's the decision the district court needs to make. But again, I just don't see the relation to this separate issue we're looking at. It's similar to the restitution area. In the restitution area, in many instances, courts have discretion either not to impose restitution or not to require collection based on the person's financial circumstances. That doesn't change the fact that at the beginning you figure out restitution, which is based on all the harm caused to all the victims of all the offenses. What significance should we attach to the fact that some courts have with multiple counts nonetheless imposed a single assessment? I believe only one case was cited that we addressed in our brief where it actually wasn't possible to impose multiple assessments because the first crime took place before this act was enacted in 2015. I'm not aware of a case in which the court just did one single assessment that's in a published decision. If there is such a case, my answer would be they made a mistake based on our interpretation of the statute. Thank you very much. Thank you. Ms. Brill. Thank you. Just briefly, the various cases that did go the other way that imposed one single assessment are cited on page 7 of my brief. I additionally found three cases currently on appeal not raising this issue because the defendants prevailed, but I could give the citation or submit a letter if this court would want. Okay. In speaking on the rule of lenity and the grievous ambiguity, the standard is that ambiguity should be resolved in the favor of a defendant. In this case, the ambiguity being resolved in favor of Mr. Jommen still leads to a $5,000 assessment on top of a 368-month sentence. This is not a situation where we have to be concerned that the defendants who are culpable of serious crimes are not being appropriately punished. This is a very unique statute to fund a very specific victim compensation and law enforcement initiative. Do you agree with the approach Mr. Zelzmurn has outlined as to statutory interpretation? That is, that we start with the text, but then we exhaust  I'm thinking about that. I think that the text would prevail. I think that the text is the place to start, and the rule of lenity would apply there initially, but even if this court does not agree that the plain text, that the decision can be made just on the plain text, the other sources of interpretation still continue to support Mr. Jommen's argument, and then the rule of lenity would apply as well. We didn't discuss the legislative history, and I haven't been able to find anything quite significant, but everything I've found has indicated that the $5,000 assessment is what Congress intended. The advocates who were working with Congress to create the statute also suggested that the $5,000 total assessment was there, and so whether Mr. Zelzmurn's proposition that lenity doesn't kick in until all the other canons have been exhausted or at the very beginning, both conclusions would lead to the same outcome, which is that Congress only permitted a $5,000 special assessment in addition to the 3013 assessment, the criminal fine, and restitution, and that it was plain error for the district court to impose a sentence above the statutory maximum here. Thank you. Our thanks to both counsel. It was an excellent briefing and excellent arguments today.